# Third District Court of Appeal

## State of Florida

Opinion filed August 23, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2750
Lower Tribunal No. 14-29169

_____

**GEICO General Insurance Company,**
Appellant,

vs.

**Barry Mukamal, as court-appointed receiver for Carlos Lacayo; and Kathleen Kastenholz and Michael Kastenholz, as co-personal representatives of the Estate of Emerson Michael Kastenholz,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Rosa I. Rodriguez, Judge.

Shutts & Bowen, LLP, Stephen T. Maher, Frank A. Zacherl, and Alfredo L. Gonzalez, Jr., for appellant.

Deutsch & Blumberg, P.A. and Edward R. Blumberg; James C. Blecke; Tabas, Freedman, Soloff, P.A. and Joel L. Tabas and Joshua D. Silver; Michael Seth Cohen; Easley Appellate Practice, PLLC, and Dorothy F. Easley, for appellees.

Before ROTHENBERG, C.J., and FERNANDEZ, and LOGUE, JJ.

FERNANDEZ, J.

GEICO General Insurance Company appeals from two final summary judgments entered in favor of appellees Kathleen and Michael Kastenholz, and appellee Barry Mukamal who is the court-appointed receiver for Carlos Lacayo, on the claim for declaratory judgment. We affirm the judgments, concluding that insurance coverage existed as a matter of law because there was no genuine issue of material fact that GEICO failed to comply with the Claims Administration Statute, section 627.426, Florida Statutes (2015).

The Kastenholzes sued Lacayo for the wrongful death of their son that resulted from an automobile accident. GEICO first notified Lacayo of its reservation of rights to deny coverage because Lacayo was not listed as a driver under the insurance policy. Lacayo absconded and his whereabouts are unknown. GEICO thereafter notified Lacayo of its reservation of rights because Lacayo failed to cooperate with GEICO's investigation. GEICO issued numerous other reservation of rights letters. GEICO represented Lacayo for a period of years and throughout post judgment proceedings. The jury ultimately returned a verdict for $15,350,000 in favor of the Kastenholzes. The trial court entered final judgments consistent with the jury's verdict. GEICO subsequently sought to decline coverage based on the coverage defense of breach of cooperation.

GEICO's coverage defense failed to comply with the requirements of the Claims Administration Statute. The plain and unambiguous language of section 627.426 states:

> (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a) Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
>
> (b) Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:
>
> 1. Gives written notice to the named insured by registered or certified mail of its **refusal to defend** the insured;
>
> 2. **Obtains from the insured a nonwaiver agreement** following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or
>
> 3. **Retains independent counsel which is mutually agreeable to the parties**. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

(Emphasis added).

GEICO did not comply with the written "refusal to defend" through registered or certified mail, pursuant to section (2)(b)1. GEICO instead defended Lacayo. Neither did GEICO comply with sections (2)(b)(2), (3). GEICO could not obtain from Lacayo a "nonwaiver agreement" or "retain[] independent counsel which [was] mutually agreeable to the parties" because Lacayo had absconded and GEICO did not know of Lacayo's whereabouts. The trial court's entry of summary judgments against GEICO was therefore proper.

Affirmed.

ROTHENBERG, C.J. (specially concurring).

Although I agree that the result articulated in the majority opinion is mandated by the clear and unambiguous language of section 627.426, Florida Statutes (2015), I write to expose what appears to be an unintended consequence of the literal interpretation of the statute that, in this case, defeats the very purpose of the statute. I also write to invite the Legislature to review and amend the statute to reflect the Legislative intent.

Carlos Lacayo was involved in a traffic accident while driving intoxicated, resulting in the death of five individuals. The vehicle Lacayo was driving was owned by Lacayo's mother and insured by Geico General Insurance Company ("Geico"). On March 9, 2011, four days after the accident, Geico sent a reservation of rights letter to Lacayo advising him that, while it was providing him with a defense, Geico was reserving its right to deny coverage because he was not listed as a driver on the policy. On March 10, 2011, an attorney from Cole Scott and Kissane, P.A. ("Cole Scott") wrote to Lacayo's mother, advising her that Geico had appointed the firm to represent her and her son. This letter included a statement of the insured client's rights.

Thereafter, Lacayo and his mother met with a lawyer from Cole Scott, discussed the case with the lawyer, and signed financial and insurance affidavits

5

and an authorization for disclosure of protected health information, identifying the Cole Scott lawyer as counsel for Lacayo. Several weeks later, Lacayo signed another authorization for disclosure of protected health information, which again identified the Cole Scott lawyer as counsel for Lacayo.

The personal representatives, on behalf of the estates, filed a wrongful death action ("the plaintiffs"). Discovery ensued, and both Lacayo and his mother attended a litigation settlement conference.

On June 7, 2011, facing arrest for DUI manslaughter, Lacayo fled the jurisdiction, and his whereabouts remain unknown. Based on Lacayo's flight and failure to cooperate, Geico sent numerous additional reservation of rights letters but continued to represent Lacayo and provided him with a defense. Lacayo did not return any of Geico's phone calls, appear for deposition, or answer interrogatories, which resulted in Lacayo's pleadings being stricken for his failure to comply with discovery.

In September 2012, the plaintiffs made a settlement offer of $100,000, the policy limit. Because Cole Scott had not had any communications with Lacayo, had no knowledge of his whereabouts, and had no authority to accept the settlement offer, the case proceeded to trial, and the jury returned a verdict of $15,350,000 in favor of the plaintiffs. No appeal of the judgment was filed on

6

Lacayo's behalf, however, Cole Scott did represent Lacayo at various post-judgment proceedings.

Thereafter, the plaintiffs and the court-appointed receiver for Lacayo ("the appellees") filed a lawsuit against Geico alleging Geico exercised bad faith in its handling of the claims and its obligations under the insurance contract. Because no final determination of coverage had been made, Geico filed a declaratory judgment against the appellees in the United States District Court, and the appellees amended their complaint in their bad-faith action to address the issue of coverage.

Ultimately, the coverage issue was decided by the trial court after the federal district court dismissed Geico's federal coverage action on abstention grounds. The trial court granted summary judgment in favor of the appellees on the coverage issue based on its finding that Geico did not comply with the expressly listed methods of compliance with section 627.426(2)(b), the Claims Administration Statute. Specifically, Geico did not deny coverage, obtain a non-waiver agreement from Lacayo within sixty days of its reservation of rights letter, or retain independent mutually agreeable counsel to represent Lacayo. Thus, Geico was precluded as a matter of law from denying coverage.

Pursuant to section 627.426, once Geico sent its reservation of rights notice to assert a coverage defense, Geico had three options: (1) refuse to defend Lacayo; (2) obtain a non-waiver agreement from Lacayo; or (3) retain independent,

mutually agreeable counsel to represent Lacayo. Failure to perform any of these three options precludes a later attempt to deny coverage.

Geico did not refuse to defend Lacayo within sixty days of its reservation of rights. And because Lacayo absconded, Geico could not obtain either a non-waiver agreement from Lacayo or Lacayo's agreement for the appointment of independent counsel to represent Lacayo. Thus, Geico was placed in the proverbial catch 22 position. It could either (1) abandon Lacayo entirely, leaving Lacayo with no representation or defense, and potentially subject itself to bad-faith litigation if it was later determined that Lacayo was covered by the policy, or (2) continue to defend Lacayo in his absence and waive its coverage defense. Geico chose the second option.

**ANALYSIS**

Although Geico's initial reservation of rights was based on Geico's position that Lacayo was not covered by the subject policy, after Lacayo fled on June 7, 2011, Geico sent several additional reservation of rights letters to Lacayo's last known address based on Lacayo's failure to cooperate, which under the policy was a defense to coverage. However, under the Claims Administration Statute, because Geico was unable to either obtain a non-waiver agreement or retain independent counsel mutually agreeable to Lacayo and Geico because Lacayo's whereabouts were unknown, Geico had only one option available to it—to deny Lacayo

8

coverage. Geico, however, not wanting to leave Lacayo without representation, continued to represent and defend Lacayo, and as a result, is now subject to a bad-faith lawsuit filed against it by both the plaintiffs and the receiver appointed for Lacayo, and Geico is precluded from asserting a coverage defense.

While section 627.426 is clear and unambiguous, and therefore mandates the result identified by the trial court and the affirmance being issued by this Court, such a result appears, to me, to be contrary to the intent of the statute, which is to protect both the insured and the insurer when the issue of coverage remains an open question. Requiring the insurer to abandon a putative insured in order to protect the insurer's coverage defense only benefits the plaintiff, who will be able to litigate his/hers/its claims without opposition. And if it is subsequently determined that the putative insured's absence or failure to cooperate was not willful, and the putative insured was in fact covered by the policy, then the insurer would be subject to a bad faith litigation claim for failing to defend the insured. It is unlikely that the Legislature intended such a result when it enacted section 627.426.

I, therefore, concur with the majority opinion, and write solely to identify what appears to be an unintended consequence of the subject legislation and to invite review by the Florida Legislature.

FERNANDEZ, J., concurs.

9